The first case this morning is Gon v. Holt. Mr. Smith. May it please the court. My name is Greg Smith and with my co-counsel John Lowe. We represent Genli-Yi Gon, the appellant petitioner, who challenges his continued detention and respondents efforts to extradite him to Mexico. We have limited our appeal to four issues. First, whether the D.C. Magistrate... You have more than four issues? No, sir. Okay. We did below, but not here. First is whether the D.C. Magistrate properly exercised jurisdiction over petitioner's extradition hearing. Second, whether the doctrine of non- bis and edam limits Mexico's extradition request. Third, whether Mexico's particular acts charged satisfy the dual criminality requirement. And finally, whether this court should limit any extradition ordered under the rule of specialty. I will spend most of my time in the middle two issues. On jurisdiction, I'll simply say that we stand on our brief, but our view is that under their view, under their interpretation, the government can haul someone to California, even to Hawaii or Alaska for an extradition hearing. Well, we've approved that process in the Somali pirate case, Shibin. He was brought into the United States, and this court held he was found here. Your Honor, I appreciate that, but in that case, because there was no other alternative, the place he was brought into, he was in the United States in one location. In this case, my client was voluntarily in Maryland, and because there was another option, which is Maryland, which is the place of asylum, which is where the Supreme Court has said he was found under the understanding, his only place of asylum, the only place he was voluntarily, was in Maryland. But if this court approves this, it will allow forum shopping anywhere. And I guess I'll leave it there, but if you allow the place of detention to determine where someone gets their extradition hearing, the government can haul them in. Can we arrange to have that forum shopping to get people out of the Fourth Circuit? Do you think that's a likelihood? We don't know about that, do we? We don't. This one was Maryland. Your point is taken, though. You said you want to rest on your brief, but make that point. Yes, Your Honor. I want to spend most of my time on the other issues. On non-bizetum, there has never been a stronger non-bizetum case than this one, ever. I'm unaware of any extradition case where the U.S. government prosecuted first for this long, or any case in which a defendant was detained on the U.S. criminal charge without bail for two years, and there's certainly no extradition case that I'm aware of where the U.S. criminal case was then dismissed with prejudice, or where the government's own statement of reasons for that dismissal was evidentiary concerns. I'm not aware of any other case where the U.S. criminal case itself was specifically based on activities in Mexico. That's what the evidence in that case would be basically the same as the U.S. case. Is an indictment enough? Simply a federal indictment of an extradition. I think that's a harder case, Judge Davis. What about an indictment and an arraignment? In other words, you see what I'm trying to... I do. How far down the prosecutorial pathway must the case go before extradition is precluded? I don't think the court needs to draw that line here. What I can say is this, and firmly, when a case, a prosecution lasts for two years, and a person is put in maximum security for two years in D.C. jail without bail, and that case is dismissed with prejudice... That sounds like a policy argument, that you want us to examine the length of time. I don't see any support for giving the length of detention, for example, this positive weight. I think... And I don't mean by suggesting it's a policy argument. I don't mean to suggest that that's not appropriate. No, I appreciate that. I guess what I would say is that the issue before the court is, was this a prosecution? What do you do about the language in Article 6 that says, one, prosecuted or tried, and convicted or acquitted, which leads me to the question, does dismissal with prejudice mean that he was acquitted? Yes, Your Honor. Is that the position you're taking? It is, although I don't know that you necessarily need to go there, because the phrase actually is, has been prosecuted or has been tried and... And convicted or acquitted. Right, but the have-been clause, in other words, what we're trying to do is to take... You don't think acquitted or convicted modifies prosecution? I don't, Your Honor. That's what I mean, that's your argument there. It is, and in a juvenile context, someone wouldn't have to be prosecuted to be convicted or acquitted. There's not a prosecution, it's a juvenile delinquency proceeding. Under that view, what if a trial began and didn't go to either, you know, it was a mistrial for some reason, so it didn't go to either an acquittal or a conviction? Is that still a prosecution, so that it would count? Your Honor, I submit that it is, because the issue... So in other words, in that case, a person would be protected from extradition because he's still been prosecuted, although the trial in which he was, that provided the basis for that prosecution, didn't end up in a conviction or an acquittal. You think that's still a prosecution which would protect that person from extradition? Your Honor, I think this is... If you'll answer that yes or no first, and then you can explain it. Yes, I think it would bar someone, because this is a... Then what happens to the phrase, trial, what's trial to a conviction or acquittal, isn't that superfluous? Because any time you have a trial, you're prosecuted, aren't you? Not in a juvenile delinquency trial, no. So in other words, other than juvenile delinquency, the trial to acquittal or conviction has no meaning? Well, let me be clear. I think that we both have a prosecution and an acquittal here. I'm asking about the language of the treaty. Yes, and the key language of the treaty is the fact that it uses has been... I know that, but I'm asking you under your reading, is a trial, leave juvenile case aside, is a trial a prosecution? It's hard to say it's not. It's a part of a prosecution. I don't know about the part of, is it a prosecution or not? If somebody gets to trial, yes, they've been prosecuted in a criminal case, yes. Right. So then, trial to acquittal or conviction, that phrase is meaningless. All you need is prosecution, because every trial is a prosecution. Isn't that correct? Your Honor... I mean, do I have that right? I think it's not meaningless because in a juvenile context, it wouldn't be meaningless. So the only meaning is it has, those words have meaning only in a juvenile context? What I would say is this, Your Honor... I just want you to, let me phrase this question. If every trial is a prosecution... Except in juveniles, delinquency proceedings. Then why is, for anybody other than juveniles, why is the trial to acquittal or conviction, why is that language even necessary? Because it's needed in a juvenile setting. Okay. I'm surprised you didn't respond to Judge Shedd by pointing to the use of or, or in the treaty. Do you not rely on that? Your Honor, I think the key language is the fact that has been is used twice. Has been prosecuted or has been tried. It seems to me that or does a lot of work in that sentence. Or suggests alternative, does it not? It does. I appreciate what you're saying about has been. Right, and what they're trying to do is... But you can't be tried and convicted without a prosecution. I'm sorry, say again? You can't be tried and convicted in this country without there having been a prosecution of the defendant. I think you perhaps can in a juvenile proceeding. Okay, apart from juvenile proceedings. I think this was in there for, for juvenile purposes. Really? I... You think that... Well, what I was saying... The treaty writers really have in mind 14-year-olds who do whatever 14-year-olds do. Both in, you know, Costa Rica and in America. Your Honor, what I can say is this. This has been prosecuted or language is not in other treaties. This is a specific, that special language is not in other treaties. Most of them say tried and convicted or acquitted. None of them have this has been prosecuted or. So this court needs to determine what that phrase means. It means something other than jeopardy. It means prosecuted. And understand the court is having challenges with this. Let me turn to my other argument, which is even if prosecuted is not enough, we believe that the dismissal with prejudice is an acquittal. So regardless of whether you find the prosecution alone sufficient, there has been a prosecution and there has been an acquittal. Professor Salzberg said that that's the functional equivalent of an acquittal. And it certainly has no different... But he also said no court has ever held that. Well, no court has ever addressed this. That's what I'm saying. This is a case of first impression. So you're right. But no, no court has ever dealt with it. Does a dismissal with prejudice count for double jeopardy purposes? It is not jeopardy, but this clause doesn't use jeopardy. It's a broader term. I didn't say that it did. Yes, you're correct. You're correct. It would not count for jeopardy purposes. Let me turn to dual criminality. Under the Speedy Trial Act, again, I realize we're dealing with treaties here, not domestic statutes, but there can be a dismissal with prejudice that doesn't close further prosecution. You agree? Dismissal with prejudice... With prejudice. Would preclude further prosecution on that charge. On a separate indictment? Isn't the government free to go get a second indictment? Not if it's dismissed with prejudice, Your Honor. That's your understanding of the Speedy Trial Act? At least with regard to the charge that's dismissed with prejudice, absolutely. They cannot recharge that offense. That's exactly what that means. Dual criminality. To satisfy dual criminality, the particular act charge must be criminal in both countries. That's what Collins v. Luisel says. Let me turn specifically to the charges because I have limited time left. Looking at these individual charges, the most obvious one is Mexico's firearms offense. It is a pure status offense. All they would have to show, if this goes back to Mexico, is that my client did not have permission from the military to possess a firearm. Now, how is that a crime in the United States, to possess a gun that the military didn't authorize? It is not something where the specific charge is something we would recognize. We absolutely reject that paradigm in the United States, that possession of a firearm, simply because the military didn't authorize it, is a crime. That charge absolutely cannot satisfy dual criminality. Period. Also deficient is Mexico's money laundering charge. Because they charged it as maintaining funds in Mexico. For it to be a crime in the United States, there has to be a financial transaction. They charged maintaining funds. Not sending funds out, but the opposite of that. Maintaining funds in Mexico. That does not satisfy the dual criminality requirement, because there is no financial transaction involved in that. That, too, cannot possibly satisfy the dual criminality requirement. Now, if they charged it differently, could they have? They didn't charge it differently. The charged act is maintaining funds, and sending funds out in no way underlines the charge that they brought, which is maintaining funds in Mexico. You've got your red lights on now. Do you want to borrow some time from your rebuttal time? I'll borrow just a bit. And thank you for letting me know. Finally, let me address just briefly, well, on the dual criminality, one more thing, and that is the various drug charges, they all arise from substances that are not illegal in the United States. Anacetyl pseudoephedrine is not a controlled substance in the United States, and our expert clarified that the ephedrine acetate that was at issue here is not a controlled substance in the United States, so dual criminality is not satisfied there either. Finally, with respect to the rule of specialty, if this court decides to extradite, at a minimum, you ought to preserve your own judicial authority. This is an unusual situation. We know that Mexico has brought other charges, not brought before a U.S. court, on which they've never sought extradition. Those are hanging out there. The government has said they can unilaterally expand the extraditable charges without getting this court's permission. We're not talking about future offenses, we're talking about known Mexican charges that they could have brought to this court. I'm sorry, did you say the United States government said that, or the Mexican government? The U.S. government is saying that the executive branch has unilateral, exclusive authority to expand the charges. Does the Secretary of State have the authority to consent to enlarge it with the Mexican government? That's my concern, and that ought to be this court's concern. It is an avenue for them to circumvent judicial review. The whole purpose of judicial review in the extradition context is as a check on executive branch power. If they're claiming an exclusive right to expand the charges beyond what the courts have authorized, you as a court, institutionally, ought to preserve your right of judicial review. How do you propose we do that? I propose you doing that by, if you order extradition, at a minimum saying that at least as to known charges that could have been brought before this court for extradition that petitioner cannot be authorized, let me say it this way, petitioner cannot be prosecuted in Mexico on any other existing charges that Mexico could have but did not bring before the U.S. courts without further leave of this court. They can still come back and get leave. Doesn't that put us in conflict with the executive branch and the power of the Secretary of State? I think that this court ought to, and the judicial branch ought to, do what it has always done, and that is to serve as a check on executive branch power. They are claiming a unilateral, unlimited right to expand the charges. And this court, if you don't want them to start evading and circumventing judicial review by bringing some minor charge and then expanding it with a murder charge that they just happen to unilaterally authorize, the only way you can preserve your judicial review is to include that sort of caveat here. I'll reserve my time. Thank you. How much time does he have left? He had seven minutes for rebuttal and he's used three and a half. We'll give you four minutes. Thank you very much. Mr. Romano. Good morning. May it please the Court, my name is John Alex Romano. I represent the Federal Respondent, Gerald Holt. On the question of jurisdiction, the District Court correctly ruled that the magistrate judge in the District of Columbia had jurisdiction over the tradition complaint. For purposes of Section 3184, Mr. Egon was found in the District of Columbia when the complaint was filed because he was lawfully in custody there as a result of the criminal case. Do we have to worry about people being dragged to other jurisdictions that suit the federal government? Not at all, Your Honor. The fact is that he was in custody in the criminal case for over a year before the extradition complaint was filed and the District Court rejected any suggestion that we were... But the same concept would apply if you just took somebody back for that purpose? I'm sorry? If you just found the person and took them back by force, they'd still be present, wouldn't they, in the new destination? Well, is Your Honor talking about finding him in the United States? If he were found in a particular state and arrested on the extradition warrant, that is where the extradition... I don't know. You find him in Washington State and for some reason you can bring him back to Virginia and once you're here in Virginia, then you serve him with the papers. If he was still found in Virginia. If he was brought back for another reason and it wasn't by virtue of the extradition warrant, if the extradition arrest didn't occur in that other state, that would still be proper. And we think the Chibbon case, for example, supports that, the notion that even if an individual is not in a jurisdiction entirely, he is still found in, for purposes of a statute, he's still found in that jurisdiction. If he's there for another reason, not brought back for the extradition service? That is the situation. Our position is that if he's arrested on an extradition warrant in a certain state... I don't want to belabor that. Thank you. Turning to the non-bizimitum clause of the treaty, that provision does not bar Mr. Ugon's extradition to Mexico for at least three reasons. Because he was not prosecuted within the meaning of Article 6 on that charge, because any prosecution was not for the same offense for which Mexico seeks extradition, and because even under the Sindona standard that my opponent urges his court to adopt, he cannot prevail. On the first question, for purposes of Article 6, our position is that he was not prosecuted because there was never a factual determination of his guilt or innocence. The United States moved to dismiss the U.S. drug conspiracy charge before trial. And it did so out of deference to Mexico's strong interest in prosecuting its own national for conduct that occurred within its own territory. And I disagree with my opponent's characterization of the reason why the U.S. government dismissed the criminal case. We did note, in moving to dismiss the case, we did note some evidentiary concerns. But we made quite clear, both in the initial motion to dismiss at pages 208 and 209 of the Joint Appendix, and in a supplement on page 1217 of the Joint Appendix, we made clear that we were moving to dismiss out of deference to the incoming extradition request. So your argument is that he was prosecuted in the sort of Merriam-Webster sense of word? He may be. We have made a plain language argument. Our primary argument is that if you look at the intent of the parties, which is what controls treaty invitation, there's nothing indicating that the parties would have intended for the bar to extradition to apply in this scenario. Why does it say or? Has been prosecuted or tried? Our position is that for U.S., in terms of what a prosecution would be for U.S. purposes, because it's important to bear in mind that the prosecuted will have some meaning on the Mexican side of the equation, but that would cover an instance where an individual pleads guilty or where you may have a trial that's begun that gets dismissed for some reason and Double Jeopardy would preclude a retrial. So that is our reading of the term prosecuted. Why would you in the world dismiss a case with prejudice? Your Honor, we initially moved to dismiss without prejudice precisely in case there was some problem with the extradition proceeding. The district court overseeing the criminal case, I believe this is in the habeas record, had some concerns over a dismissal without prejudice. So the government ultimately did agree in the end to a dismissal with prejudice, but it was on the government's motion and the government's reasons, as stated in its pleadings for dismissing, we think show clearly that it was dismissed out of deference to the incoming extradition request. I would like to move to the second point, which is that even if the court disagreed with the argument about the term prosecuted or didn't want to address it, it could decide the case on the second issue in terms of the meaning of offense in Article VI. It's undisputed that the elements of the U.S. drug conspiracy charge that gets dismissed is not the same as the elements of any of the Mexican charges that have been brought. And we think the extradition magistrate correctly ruled that the same elements test or the Blockberger test should be used for determining whether an offense is the same for Article VI purposes. And that argument is based on the text of the treaty, the executive branch's longstanding interpretation of these types of non-biz and medium clauses that use the term offense, as well as with the state of U.S. double jeopardy law. As to the text of the treaty, Article VI uses the term offense, not acts, even though at another point in the treaty, in Article II, it uses the term acts in setting forth the dual criminality requirement. And we think the extradition law is clear that the term offense is narrower than the term acts. And certainly when you have the contrasting use of the two terms in the same treaty itself, the term offense has to signal a much narrower exception to extradition than the same acts standard. That's also consistent with the executive branch's longstanding interpretation of offense-based non-biz and medium clauses, which is that the term offense applies to identical... Do you read all of that non-biz item clause that we're talking about, do you read that narrowly as an exception? You can't do it if. Do you read that narrowly in treaty construction or not? In terms of... John, I think just as a general matter or with respect to the particular language... As a general matter, yes, and that's because my understanding is that most non-biz and medium clauses will use the term offense. I may be talking about the language prosecution and trial. Do you read that in a way that limits the treaty's reach or not? Read that narrowly as an exclusion. We do, because it's a staple of treaty interpretation, we think, is that where you have... You might have two permissible readings of a treaty clause, one that might restrict the rights under a treaty and one that might enlarge them. The latter preference, the more liberal interpretation, is preferred, and here the rights of the treaty are the rights between the parties, between the government of Mexico and the government of the United States. To answer the question that I asked the other side, doesn't every trial amount to a prosecution? Notwithstanding the prosecution or trial, doesn't that... That didn't mean that trial... You can answer about the juvenile situation, but doesn't that make that trial to conviction, doesn't it make that superfluous? There is some redundancy, Your Honor. The clause is not a perfect model of clarity. Why wouldn't it be? My question is, why wouldn't it be superfluous if, in fact, every trial is a prosecution? Then why would you need that language? If prosecution just means you've had some action taken... Why would you need the trial language? No, no, no, why would you need the trial language? There is some redundancy there. It's also important to bear in mind that the term prosecution may cover proceedings on the Mexican side of the equation, which might account for the introduction of that term along with the trial and convicted or acquitted, which is a staple of our U.S. judicial system. Let's forget the Mexican proceedings for a while. Just explain it to me in terms of U.S. proceedings. Your Honor is correct. A trial occurs during a prosecution, so there is a redundancy there. But we do interpret prosecution to mean to cover a non-trial situation where you might have a defendant pleading guilty. That's what I'm saying. If they don't have different meanings, then I don't understand why the trial language is in there. If you've been prosecuted, we could argue about does that cover dismissal with prejudice or without prejudice or an indictment. We could argue about that, but there would be no argument about how to look at a trial because it would automatically be a prosecution. Doesn't that augur to suggest that they mean two different things and prosecution by itself is not enough? That there has to be some conclusion in the form of conviction or acquittal. Yes, and that is certainly how the district court here read it. I'm asking you how you read it. We do think that is a reasonable interpretation of this language in light of treaty interpretation principles which is that where you could have different interpretations, the one that enlarges the rights under the treaty is to be preferred. Even under an exclusion? Isn't this an exclusion? It is an exclusion. Why would you enlarge it if it's an exclusion? The purpose of a treaty, and I think we've cited the Ludecky case out of the Fifth Circuit for this, is the surrender of a fugitive to face the foreign charges. That's a purpose generally, but if you have an exclusion under that general purpose, statutorily, this is a treaty, you would read the exclusion narrowly, wouldn't you? For statutory purposes, yes, but I think the rules are different when we're talking about interpretation of a treaty. Even if the court disagrees with our interpretation of the term prosecuted, we think we prevail on the meaning of offense for all the reasons stated. Unless this court has any questions about the Sindona case, we believe that was incorrectly decided with respect to Judge Friendly, but primarily because it is based in part on an incorrect reading of double jeopardy law at the time. We think the Dixon case out of the Supreme Court makes clear that except for a brief period in the early 1990s under Grady v. Corbin, the same elements test or the Blockberger test has always governed double jeopardy analysis and that would further support reading offense in Article VI in the manner in which we do. Turning to dual criminality, the District Court correctly concluded that there was dual criminality, that it was satisfied for each of the charges for which Mexico seeks extradition. As to the question of the proper methodology for conducting dual criminality analysis, an extradition court is not limited in our view to reviewing the acts that are described within the four corners of the charging instrument. That type of limitation would inevitably lead to an impermissible comparison of offense elements. The law is clear that you don't compare offense elements when you're doing dual criminality analysis and if you have that limitation, very often a charging instrument will only set forth the facts necessary to allege the elements of an offense. So you almost inevitably wind up with comparing offense elements in practice. What dual criminality requires, we think, is a review of the conduct underlying the charges brought as shown by the evidence... You don't think it's an element-to-element comparison? That's correct. I don't understand my opponent to be arguing that it is an element-to-element comparison. But we don't think an extradition court is limited to reviewing the acts as described within the four corners of the charging instrument. We think it's permissible to consider the evidence of the underlying conduct that is presented by the requesting state. Here, the conduct underlying the Mexican charges established violations of U.S. law. I'd like to run through each set of offenses quickly, if I may. To begin with the drug offenses, Gigan's underlying conduct would violate Section 843A6 and A7 of Title 21, which together make it a crime to possess, import, distribute, or manufacture any chemical that can be used to produce a controlled substance or a listed chemical with knowledge or intent or reason to believe that it would be used for that purpose. Most of the drug charges, as the Court knows, concern the production of pseudoephedrine hydrochloride. That is a List I chemical under U.S. law. The record shows that it can be produced by using N-acetyl pseudoephedrine by heating that with hydrochloric acid. The magistrate judge found here that on at least three occasions, from the end of 2005 to 2006, Gigan imported N-acetyl pseudoephedrine, a chemical, and that each day during this period at his Toluca plant, his plant in Toluca, Mexico, there would arrive a white chemical substance which was then heated with hydrochloric acid in a closed-off area of the plant that was closed off to most personnel. Through that process, each day, 600 kilograms of a white crystalline powder was produced. Let me ask you about the rule of specialty. Why? I bet if I pressed you right now, you would say that the judicial branch is a paramount branch of government. I bet if I pressed you, you'd say that. So if that's the case, why would we let the executive branch cut into our authority? Your Honor, we don't view it... That's the argument we heard from the other side. I want you to tell me why I shouldn't be concerned about that. To begin with the text of the treaty, there is an exception to the rule of specialty set forth in Article 17. One of those exceptions is the one Your Honor's question is relating to, and that is that the surrendering party can consent to prosecution on the additional charges. We do read that provision to involve the role of the executive branch in making that consent decision. And that is based... It's important to bear in mind that before we even get to this point, when this issue will come up, the fugitive will be in the foreign country. A U.S. court will have already certified extraditability on at least one felony charge, so we certainly don't take this position to undermine the court's role in the extradition process, but the fact remains that the fugitive, by the time you get this request for consent on other charges, is going to be in the foreign country. It's a foreign affairs question. And really, there is no procedural mechanism to coming back... You mean that's a supra-extradition issue? In the sense that... Exactly, that it's completely premature at this point. The rule of specialty has not attached. Article 17 says the rule of specialty applies to individuals who have been extradited. There has been no decision by the Secretary of State on extradition. If this court were to affirm the denial of his habeas petition, the decision ultimately on extradition will be made under Section 3186 by the Secretary of State. By the way, isn't that true on immigration matters? If you know, we have immigration cases here all the time, and we decide removability, and we decide whatever, and the executive branch still finally has the authority at the end of that judicial procedure to decide whether or not they do remove someone. Isn't that correct? I'm not very familiar with immigration law, but that doesn't strike me as correct. Since I said it, you think it's correct. That is correct. Unless this court covers my remarks on the rule of specialty, and I would just note that in terms of procedural mechanisms for the request that my opponent asked for, there's no procedural mechanism once a fugitive is in foreign custody to get U.S. court review. 3184 wouldn't apply, and the individual is not in U.S. custody for purposes of the habeas statute. So that would be another impediment to my opponent's request. Just very quickly, I'm curious. We are reviewing the judge's decision from the Western District of Virginia, but we defer to the factual findings of the extradition court. That's correct. And clear error applies across the board to all the factual findings. That's correct. And I don't understand my opponent to be challenging the factual findings themselves, although he may dispute the use of what those factual findings can be used for. That's what I thought. No further questions. If you want to rest on your brave phone, let me just make one comment for the court. And I should put this on the record. I rode up in the elevator this morning, walked down the hall and rode up the elevator with your colleague, who's at counsel table. We didn't talk about any of this at all. I didn't even know she was associated with this case. Exchange pleasantries, but we did ride up together. And I think I actually . . . a day for sociality for me as I rode up with the lawyers in the next case as well. But I want to put that on the record. It's not happened to me before, but had no discussion whatsoever. We were in a closed elevator for a while. I don't want there to be any appearance. There was no discussion of any merits on anything. Thank you very much. Mr. Romano, you have . . . I mean, sorry, Mr. Smith. You have four minutes. Thank you, Judge Henn. Let me start with the rule of specialty. He says it's premature to bring it, but then he also later acknowledges he's going to argue we can't get back into court. I would encourage the court to look at the Cain decision. It's from the 1850s, but extradition and judicial review are a huge piece of American history. Articles of impeachment were brought against President John Adams after he attempted, through the executive branch, to extradite someone without getting judicial authority. Ever since then, Congress has put the judiciary between someone who's facing extradition and the executive branch, and they do it for a reason. This is an issue that clearly is capable of repetition and will evade review. While he talked about the situation where a future charge comes into the executive branch, that's not what we have here. We know Mexico has brought new charges that they're not seeking extradition on. They're not seeking judicial review of. Those are the ones that this court, at a minimum, ought to say, at least as to existing charges on which Mexico and the U.S. government didn't seek judicial approval, the judicial branch needs to be checked in with before you add those charges. Those are known charges you could have brought to the court and you didn't. Let me go back to non-bizanitim briefly. Sindona, which is the leading case, says that same offense means related but not included charges. They acknowledged that these were related charges. Mexico's charges are related to the U.S. charges. That's what they themselves say in this extradition complaint. Because of that, I think that the court has to find that they fall within the non-bizanitim clause. Let me be clear, though. Not every charge is going to be excluded by non-bizanitim, but the one that should be, the one that should be, undeniably, in my view, in my heart, I believe this, is the organized crime charge. Because that is, even they acknowledge, that the organized crime charge in Mexico is similar and relates to the U.S. conspiracy charge. So at a minimum, the organized crime charge ought to be barred by non-bizanitim. And on dual criminality, the gun charge, unless this court is going to be the first court of appeals in history to allow someone to be extradited on an offense in a foreign country where they can be convicted for possessing a gun without military authority, how is that consistent with our Second Amendment, that we allow someone to be sent to a foreign country, and the only thing that that judge or court is going to decide is did he possess a gun without the military's permission. That is antithetical to U.S. views. It is impossible that that satisfies dual criminality. Why isn't that just an elements approach? Because that's all that, because they didn't charge acts beyond the elements here. They didn't charge any of this stuff about close to drugs or anything like that. None of that is in the charges. And if you send it back… But it's in the factual record here. Well, it's in the factual claims, but it wasn't in the charged acts. And Collins v. Luisel says that you look at the particular acts charged. The particular acts charged said nothing about connecting or closeness to drugs, and you won't decide that, and when it goes back to Mexico, no one there will be deciding that. Okay, I think I totally understand, but you don't challenge the factual record before us. I do challenge the fact that they, to the extent there's a suggestion that the guns were found near drugs, I do challenge that. I do challenge what we do about the facts, or with the facts, or our reliance on the facts, but you don't challenge the facts. The facts don't show relation between the guns and drug trafficking. They show guns in a home where there's no suggestion any drug transactions ever took place, and they show guns near a possession amount of drugs. I should have used the term findings rather than facts, but I appreciate your answer. Let me just close by saying I appreciate the court's time. This obviously is a matter, my client's never been accused of anything. He's 54 or 55 years old. He faces 20 to 40 years on organized crime, 10 to 25 years on the drug charges, up to 7 years on the firearms offenses, up to 15 years on the money laundering charge. He has been held in this country for over 7 years, often in maximum security, sometimes in solitary confinement. We appreciate the court's time. We appreciate the court's consideration of these very important issues. All right, thank you very much. We will step down, greet counsel, and then go directly to the next case.
judges: Dennis W. Shedd, Henry F. Floyd, Andre M. Davis